UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE NO. |
| | : | 3:17-CR-057 (JCH) |
| v. | : | |
| | : | |
| LUIS PADILLA | : | DECEMBER 17, 2021 |
| Defendant. | : | |

**RULING RE: MOTION FOR COMPASSIONATE RELEASE (DOC. NO. 60)[1]**

Luis Padilla, a defendant sentenced by this court and currently serving that sentence with the Bureau of Prisons ("BOP"), has moved for "immediate release" from the BOP.  Mr. Padilla seeks relief under the First Step Act as amended with regard to compassionate release.  As is required for "compassionate release" under section 3582(c)(1)(A)(i) of title 18 of the United States Code, Mr. Padilla has exhausted his administrative remedies.  See Mem. in Support of Mot. for Compassionate Release at 22 (Doc. No. 60-1) ("Padilla's Mem.").

Mr. Padilla argues that there are extraordinary circumstances which justify his immediate release.  See Padilla's Mem. at 5-14.  He rests his argument upon the COVID-19 pandemic and, more particularly, the virus's presence in BOP facilities.  Id.  Mr. Padilla has already contracted COVID-19 in December 2020.  Id. at 3.  He contends that he is at a high risk of again contracting the virus given the congregate nature of his confinement.  Id. at 11-12.  Further, he argues, "a large portion of people in prison, especially staff, are yet to be vaccinated."  Id.  Indeed, Mr. Padilla himself remains

---

[1] Padilla also filed a Motion for Compassionate Release in case 15-CR-172.  The court has issued a substantially identical Ruling in 15-CR-172 at docket number 91.

1

unvaccinated, as he refused the vaccine offered by BOP in March 2021, because he was skeptical about its safety and efficacy. See id. at 13-14; Medical Records at 55 (Doc. No. 63). His skepticism began when he was in the hospital to undergo knee surgery in December 2020. See Padilla's Mem. at 13; Medical Records at 74. While there, he reports a conversation he overheard between medical professionals which "raised questions in [his] mind" about "potential complications" arising from receiving the vaccine after having recovered from COVID-19. Padilla's Mem. at 13-14. Thus, he argues, he faces "potential medical harm" which presents an extraordinary and compelling reason to grant his release. Id.

Further, while Mr. Padilla does not specifically address all the 3553(a) factors, he argues that he has maintained employment and completed classes during his incarceration. Id. at 19. He also notes that he has received only one disciplinary ticket. Id. at 22. In addition, he has served much of his term of imprisonment while on partial or total lockdown. Id. at 15-18.

Mr. Padilla has identified no medical risk factors that increase his likelihood of experiencing severe illness should he contract COVID-19. Clearly, though, like all unvaccinated individuals, Mr. Padilla is more vulnerable to the virus and its effects than his vaccinated peers. However, it is this court's view that, absent a clear showing of a medical or other justified reason for refusing the vaccine, an inmate does not present exceptional circumstances on the basis of possible exposure to COVID-19, when that inmate declines the offer of a highly effective vaccine that greatly reduces transmission and markedly lowers the risk of contracting a serious or life-threatening case of the virus.

Courts in this and other Circuits have reiterated that unfounded refusal of the COVID-19 vaccine generally does not create extraordinary and compelling circumstances warranting release. See United States v. Poupart, No. 3:11-CR-116, 2021 WL 917067, at *1 (D. Conn. Mar. 10, 2021) ("[t]he opportunity for . . . inmates to opt to receive the COVID-19 vaccine represents a sea change from their previous COVID-19 vulnerability . . . . Evidence that a defendant has been offered the vaccine . . . demonstrates that he had the ability and opportunity to take measures to markedly reduce his risk of severe illness or death from COVID-19") (internal citation omitted); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("for the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release"); United States of America v. Carl Hubbard, No. 3:17CR173 (JBA), 2021 WL 5275997, at *4 (D. Conn. Nov. 12, 2021) ("being offered and refusing the COVID-19 vaccine is not an automatic, disqualifying factor for compassionate release, but refusing the vaccine without informed reason substantially detracts from an incarcerated person's claim of exceptional medical vulnerability in prison . . . . When an incarcerated individual has refused the COVID-19 vaccine, courts have nearly uniformly denied compassionate release sought for medical reasons.") (internal quotation marks and citation omitted) (citing cases); United States v. Burden, No. 3:00-CR-263 (JCH), 2021 WL 3742111, at *3 (D. Conn. Aug. 23, 2021) ("In the absence of . . . a showing [of a medical reason for declining the vaccine], taking the vaccine would reduce . . . [an inmate's] risk of COVID-19 exposure dramatically. It cannot be, in this court's view, that an inmate can decline a vaccine which, if taken, will largely avoid the risks which themselves form the basis for

his position that extraordinary circumstances exist to justify a reduction in his sentence.").

Furthermore, evidence of the vaccine's effectiveness supports the broad consensus among courts that unwarranted refusal of the vaccine cannot undergird an inmate's claim of extraordinary and compelling circumstances. The CDC has found that vaccinated persons are 5.8 times less likely to test positive for COVID-19 and 14 times less likely to die after contracting the virus. See Rates of COVID-19 Cases and Deaths by Vaccination Status, CTRS. FOR DISEASE CONTROL & PREVENTION, https://covid.cdc.gov/covid-data-tracker/#rates-by-vaccine-status (last visited Dec. 06, 2021). Furthermore, "unvaccinated people who already had COVID-19 are more than two times as likely than fully vaccinated people to get COVID-19 again." Benefits of Getting Vaccinated, CTRS. FOR DISEASE CONTROL & PREVENTION, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last updated Nov. 29, 2021). Thus, even after his previous bout of COVID-19, Mr. Padilla's refusal to take the vaccine is unsupported by the weight of scientific evidence.

This court acknowledges that the Second Circuit has suggested that an inmate should be afforded the opportunity to "explain why his release would be justified even if . . . he has been offered access to a vaccine." United States v. Jones, 17 F.4th 371 (2d Cir. 2021). Mr. Padilla has offered no justification for declining the vaccine aside from his contention that he has been "unable to get answers to his medical questions" regarding the safety of the vaccine at his facility. Padilla's Mem. at 13-14. He has submitted medical records, however, showing that he has attended multiple follow-up consultations at Health Services since December 2020 when he first began to doubt the

4

vaccine's effectiveness. See Medical Records at 1-19. Mr. Padilla offers no claim, let alone any evidence, that he asked any health professional about the vaccine during his multiple Health Services appointments, nor that he inquired as to the vaccine's safety when it was offered to him in March 2021. The record indicates that Mr. Padilla has had opportunities to seek sound medical advice regarding the vaccine but has failed to take advantage of them. Thus, given that Mr. Padilla has refused the vaccine without offering an informed medical reason, it is the court's view that, despite his skepticism regarding the vaccine's safety and efficacy, he has failed to persuade the court that he has "exceptional circumstances" under the Compassionate Release Statute as modified by the First Step Act. See 18 U.S.C. § 3582(c)(1)(A)(i); see also Hubbard, 2021 WL 5275997, at *4 (determining that an inmate's "bases for refusing the vaccine—the lack of information provided by [his facility] and his fear of unmonitored anaphylaxis—are not reasonable bases to support his claim of extraordinary and compelling circumstances.").

Even if the court were to find exceptional circumstances, it would still decline to grant compassionate release because of the 3553(a) factors that the court must consider under the compassionate release statute. See 18 U.S.C. § 3582(c)(1)(A)(i); 18 U.S.C. § 3553(a). The court reaches that conclusion having reviewed all of the filings, as well as the material before the court at the time of sentencing.

While the court recognizes that Mr. Padilla received a very lengthy sentence—a total term of imprisonment of 216 months—that sentence accurately reflected the extreme seriousness of the violent crimes Mr. Padilla committed, as well as his criminal history and characteristics. See Judgment (Doc. No. 32). Mr. Padilla pled guilty to engaging in a pattern of racketeering activity; murder in aid of racketeering; possession

of a firearm by a convicted felon; attempted interference with commerce by robbery; and carrying and using a firearm while committing a robbery.  See Judgment.  Thus, even if Mr. Padilla were to have presented extraordinary and compelling reasons for a sentence reduction, the court would not have reduced his sentence in light of the 3553(a) factors.

For the foregoing reasons, the court denies the Motion for Sentence Reduction (Doc. No. 60).

**SO ORDERED.**

Dated at New Haven, Connecticut, this 17th day of December, 2021.


/s/ Janet C. Hall
Janet C. Hall
United States District Judge